IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br><br><br><br>vs.<br><br><br>MICHAEL RICHARD BAY,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR BILL OF PARTICULARS, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND DENYING DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE<br><br><br><br>Case No. 2:09-CR-83 TS |

This matter is before the Court on three motions by Defendant Michael Bay: (1) a Motion for Bill of Particulars; (2) a Motion to Suppress Statements; and (3) a Motion to Suppress Tangible Evidence.  Defendant is charged with possession of a weapon and ammunition in violation of 18 U.S.C. § 922(g)(1).  In his Motion for Bill of Particulars, Defendant requests particularized information on the specific place and time that he allegedly possessed a firearm.[1]  In his Motion to

---

[1] Defendant also requested a statement describing how his alleged possession of a firearm affected interstate commerce, which the Government has agreed to provide.

Suppress Statements, Defendant argues that he made incriminating statements regarding possession of a firearm while under custodial interrogation. In his Motion to Suppress Tangible Evidence, Defendant argues that the whereabouts of the firearm at issue in this case were only disclosed during the same custodial interrogation.

An evidentiary hearing was held on the Motions to Suppress on May 13, 2009. The Motions are fully briefed and the matter is now ready for decision by the Court. For the reasons set forth below, the Motion for a Bill of Particulars will be granted, the Motion to Suppress Statements will be granted in part and denied in part, and the Motion to Suppress Tangible Evidence will be denied.

## I. FINDINGS OF FACT

On January 22, 2009, law enforcement was called to the Defendant's residence (the "Residence") at the request of both Defendant and his wife (the "Wife"). Officer Taylor and Sergeant Cornell arrived at the Residence in separate marked police cars. They parked on the street and observed numerous individuals loading furniture and other items into a moving truck, which was parked in front of the Residence. Officer Taylor was approached by Defendant, who indicated he had called police because he wanted to make sure that the situation remained peaceful, so that he did not violate his probation. At the same time, Sergeant Cornell instructed the other individuals to stop moving things into the truck,[2] and to move to the end of the driveway. After they did so, Sergeant Cornell spoke with the Wife near the garage of the Residence.

The Wife indicated that Defendant was on probation and that the probation officer wanted the officers to call him. Sergeant Cornell called the probation officer and informed him that the

---

[2]Sergeant Cornell testified at the May 13, 2009 Hearing that he asked, rather than directed, the individuals to stop moving furniture, but others present testified that they were commanded to stop moving, and later to move specific items, by the officers.

matter was a civil matter and that no criminal activity was taking place. The Wife also indicated that Defendant was moving things that she needed and asked the officers to intervene. Although official policy is not to arbitrate in civil disputes, the officers brought Defendant and the Wife together to discuss matters. There is some dispute as to whether Defendant was free to leave at that point. Sergeant Cornell told the Wife that no one would be leaving with her things and the Wife told Defendant what Sergeant Cornell had told her. Additionally, the official police report states that Defendant was told that any disputed items would have to stay. However, Officer Taylor testified that he had no authority to stop Defendant from loading his truck and leaving. It is clear that the only reason loading of the moving truck stopped was because the officers arrived and directed it to stop, but the tone of the conversation at that point was congenial, and there had not been any overt sign of force by the officers.

      The Wife asked for two items of furniture to be left and Defendant agreed. The officers then directed the individuals who had been waiting at the end of the driveway to remove the items from the moving truck. The individuals then returned to the end of the driveway where, one individual testified, they believed they had been directed to go by the officers.[3] When the items were removed, the officers asked if the Wife wished for anything else to remain and she indicated that she also wanted to keep her gun safe which was attached to a nightstand. Defendant agreed to leave the Wife's gun safe and it was removed from the nightstand and from the moving truck.

      The officers then asked the Wife if there was anything else she needed and the Wife indicated that she had two firearms which were kept at the cabin owned by Defendant's family.[4] Defendant

---

[3] At no point did the officers indicate that anyone was free to leave.

[4] In previous testimony, Officer Taylor had indicated that his interest was piqued by the mention of a gun safe, but at the May 13, 2009 Hearing, he modified his testimony to indicate

3

responded that only one of the firearms was hers, that he had stayed at his family's cabin the night before, and that he had brought her firearm back from the cabin to give to her. The officers asked where it was and Defendant responded that it was in a shed at the Residence. Sergeant Cornell directed Defendant to take him to the firearm and Defendant complied. Defendant indicated where in the shed the firearm was located and, after Defendant described the location, Sergeant Cornell retrieved the firearm, which was contained in a bag.

At this point, Sergeant Cornell called dispatch and discovered that Defendant was a restricted person. He informed Officer Taylor of this fact and the officers allowed the moving to continue. For approximately twenty to thirty minutes, Defendant helped move items into the moving truck, along with the individuals who had been waiting at the end of the driveway at the officers' direction. Eventually, Officer Taylor asked Defendant to accompany him away from everyone else to where Officer Taylor's police car was parked.[5] Officer Taylor proceeded to ask Defendant a number of questions, and eventually informed Defendant that he was under arrest and placed him in handcuffs. No evidence was presented to show that Defendant was informed of his *Miranda*[6] rights at that time or at any time thereafter.

---

that his interest was piqued only after mention of the firearms. In either event, however, it indicates that he had some understanding that Defendant might be a restricted individual and that possession of a firearm by Defendant might be a crime.

[5] The government alleges that Defendant's parents were present at the time Officer Taylor was questioning Defendant, but the evidence produced at the May 13, 2009 Hearing indicated that Defendant's parents only arrived after Defendant had been placed under arrest.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. DISCUSSION

Defendant moves for a bill of particulars, claiming that the indictment could lead to multiple claims of possession, based on potential possession by Defendant at his family's cabin on January 21st or 22nd, or possibly even earlier. Defendant also moves to suppress statements and the firearm, itself, on the grounds that his statements related to the gun were only obtained through custodial interrogation on January 22, 2009, without being informed of his *Miranda* rights.

### A. BILL OF PARTICULARS

"The grant or denial of a bill of particulars is within the trial court's discretion . . . [and] will not be disturbed absent a showing that the accused was denied information that would have more specifically defined the offense charged."[7] "A bill of particulars is not to be used to compel the government to disclose the precise manner that it believes the defendant committed the crime charged."[8] In this case, the indictment charges Defendant with possessing a firearm "[o]n or about January 22, 2009."[9] Defendant argues that the lack of specificity in the date could open him up to multiple charges of possession, including possession at his family's cabin, possession while transporting the firearm to the Residence, and possession while at the Residence. The Court agrees, and will direct the government to indicate the nature and more precise time period in which possession is being alleged.

---

[7] *U.S. v. Evans*, 542 F.2d 805, 809 (10th Cir. 1976).

[8] *U.S. v. Bolden*, 1995 WL 783638, *6.

[9] Docket No. 1 at 1.

B.     MOTIONS TO SUPPRESS

Defendant argues that his statements regarding the firearm and the firearm, itself, should be suppressed because he was in custody at the time his statements were made and, therefore, should have been given a *Miranda* warning. The government contends that he was neither in custody nor being interrogated.

"Police officers need not administer Miranda warnings to everyone they question. On its own terms, *Miranda* applies only to 'custodial interrogations.' Thus, Miranda rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'"[10]

In *United States v. Jones*, the Tenth Circuit exhaustively summarized its cases interpreting controlling United States Supreme Court case law on this issue.

> It is settled that the safeguards prescribed by *Miranda* become applicable only when a suspect's freedom of action is curtailed to a degree associated with formal arrest. Only then can we say a suspect is in custody.
>
> Whether a suspect is in custody represents an objective determination. We therefore must determine whether a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest. . . .
>
> The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive. We thus avoid hard line rules and instead allow several non-exhaustive factors to guide us. First, we consider the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. Second, we look at the nature of questioning, where prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave. Finally, by using the following helpful guideposts, we check whether police dominate the encounter:
>
> Separation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers;

---

[10]*United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008) (quoting *Miranda*, 384 U.S. at 444) (additional citation and quotation marks omitted).

display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.

Although these factors are useful, we emphasize that we must look to the totality of the circumstances and consider the police-citizen encounter as a whole, rather than picking some facts and ignoring others.[11]

1. *Custody*

Considering the circumstances of this case, the Court concludes that the earliest Defendant could be considered in custody was the moment Officer Taylor requested that Defendant accompany him to Officer Taylor's patrol car. Prior to that point, the officers had been engaged in helping to resolve a civil matter and had no reason to place anyone in custody.

The officers had maintained control over the scene ever since arriving, directing those present to stop loading the moving truck, then directing that certain items be removed. These interactions were in a conversational tone and without any overt show of force. However, at least one of those present testified that they felt that they had no choice but to comply with the officers, and no one was told that they could leave. Defendant argues that, being on probation, he felt that he could not decline to answer questions or cooperate with the officers, and that the officers had implied that he was not completely free to leave by telling him that he could not leave with any of the disputed property. Defendant was also never told that he could leave or refuse to answer questions. Finally, contrary to their own departmental policy, the officers remained for an extended period of time at the Residence, arbitrating the dispute between Defendant and the Wife, thus establishing themselves in a position of authority over those present.

---

[11] *Id.* at 1239-40 (all internal quotations, citations, brackets, and quotation marks omitted).

7

However, after the initial contact between Officer Taylor and Defendant, which was initiated by Defendant, Defendant was not isolated from the rest of those present, the officers' tone was conversational, and the officers did not exhibit any show of force. The officers testified that they had no reason to suspect that Defendant would be subject to any criminal penalties, so there was no reason for the officers to take Defendant into custody.

After Sergeant Cornell retrieved the firearm from the shed as a precautionary measure, he contacted dispatch and was informed that Defendant was a restricted person, subject to criminal penalties due to his possession of the firearm. For twenty to thirty minutes, the officers said nothing to Defendant and even allowed Defendant and others to continue loading the moving truck. However, they continued to question the Wife and others present. Officer Taylor then asked Defendant to move away from everyone else, moving towards Officer Taylor's police car. At that point, Officer Taylor knew he had cause to arrest Defendant.

The Court finds that, prior to Sergeant Cornell's call to dispatch, where he learned of Defendant's restricted status, no reasonable person would have concluded that Defendant was under arrest. However, the Court finds that, considering the length of time the officers had been at the Residence, the questioning of Defendant and the Wife, the presence of the firearm and the associated criminal penalties, and the fact that Officer Taylor isolated Defendant in close approximation to Officer Taylor's patrol car, a reasonable person would have concluded that, once isolated in that manner, Defendant was under arrest and, therefore, in custody.

2. *Interrogation*

The Court also finds that the questions initially posed by the officers cannot meet the legal definition of interrogation. The officers inquired only as to the nature of the disputed property and Defendant's willingness to leave the property at the Residence. It was during this benign line of

8

questions that the Wife indicated that she wished to regain possession of her firearm. In response to that statement from the Wife, Defendant indicated that he had brought the firearm to the Residence. The existence of the firearm was, therefore, revealed without any interrogation on the part of the officers. Moreover, Sergeant Cornell testified that he directed Defendant to lead him to the firearm as a security precaution, an action that was reasonable given that both the Defendant and the Wife had contacted police in order to make sure that the situation did not escalate. Up to that point, the officers had no reason to believe that Defendant would be arrested, and their questions do not indicate an intent to elicit incriminating responses from Defendant.[12]

After Defendant had been separated from his family and other individuals, Officer Taylor began to ask a series of questions that mirror the elements of the crime for which Defendant is now charged. Officer Taylor had learned from Sergeant Cornell that Defendant was subject to criminal penalties as a result of his possession of the firearm, and his questions could reasonably be expected to yield incriminating answers.

   3. *Were* Miranda *Warnings Required?*

The Court finds that, prior to the questioning of Defendant next to Officer Taylor's patrol car, Defendant was neither in custody nor was he subject to interrogation. Because the existence of the firearm was revealed before Defendant was in custody, and in response to statements from the Wife, *Miranda* warnings were not required and the Court will deny Defendant's motion to suppress the firearm. The Court will also deny Defendant's motion to suppress any statements made to the officers prior to the questioning next to Officer Taylor's patrol car. However, because the Court finds that Defendant was in custody when being questioned next to Officer Taylor's patrol car, and

---

[12]*United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)).

because Officer Taylor's questions constitute interrogation, the Court will grant Defendant's motion to suppress those statements made after Officer Taylor asked that Defendant accompany him to the patrol car.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for a Bill of Particulars (Docket No. 16) is GRANTED, as described above.  It is further

ORDERED that Defendant's Motion to Suppress Statements (Docket No. 18) is GRANTED IN PART AND DENIED IN PART, as described above.  It is further

ORDERED that Defendant's Motion to Suppress Tangible Evidence (Docket No. 20) is DENIED.

DATED   June 30, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge